UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-CV-00104-JHM

KAREN ARNOLD                                                                    PLAINTIFF

V.

OWENSBORO HEALTH FACILITIES, L.P. d/b/a
TWIN RIVERS NURSING & REHABILITATION CENTER;
OWENSBORO HEALTH FACILITIES GP, LLC;
PREFERRED CARE PARTNERS MANAGEMENT GROUP, LP;
PCPMG, LLC; PREFERRED CARE OF DELAWARE, INC.
d/b/a PREFERRED CARE, INC.;  KENTUCKY PARTNERS
MANAGEMENT, LLC; SHELLY RANEE MAFFIA,
in her capacity as Administrator of Twin Rivers Nursing &
Rehabilitation Center; JOHN DOES 1 through 5, UNKNOWN
DEFENDANTS                                                                      DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Compel Arbitration [DN 8] filed by

Defendants Owensboro Health Facilities, L.P., d/b/a Twin Rivers Nursing and Rehabilitation

Center, and Preferred Care of Delaware, Inc., d/b/a Preferred Care, Inc. (collectively "Moving

Defendants").  Fully briefed, this matter is ripe for decision.  For the following reasons, the

Motion to Compel Arbitration is **GRANTED**.

I.    BACKGROUND

This action arises out of Plaintiff Karen Arnold's residency at Twin Rivers Nursing and

Rehabilitation Center.  On July 15, 2015, Arnold filed this action in Daviess County Circuit

Court against Defendants, seeking compensatory and punitive damages for allegedly negligent

care and treatment of her while she was a resident at Twin Rivers.  In the Complaint, Arnold

alleges negligence, medical negligence, corporate negligence, and violations of long term care

resident's rights.  (See Compl. [DN 1-2].)  On August 12, 2015, Defendants removed this action from Daviess County Circuit Court to this Court under 28 U.S.C. §§ 1332(a), 1441(a).[1]

Moving Defendants seek the Court to compel Arnold to pursue all claims arising out her residency at Twin Rivers in accordance with the arbitration agreement she signed.   The Alternative Dispute Resolution Agreement ("ADR Agreement") provides, in relevant part:

> **Voluntary Agreement to Participate in ADR**.  The Parties agree that the speed, efficiency and cost-effectiveness of the ADR process, together with their mutual undertaking to engage in that process, constitute good and sufficient consideration for the acceptance and enforcement of this Agreement.  The Parties voluntarily agree that any disputes covered by this Agreement (herein after referred to as "Covered Disputes") that may arise between the Parties shall be resolved exclusively by an ADR process that shall include mediation and, where mediation does not successfully resolve the dispute, binding arbitration.  The relief available to the Parties under this Agreement shall not exceed that which otherwise would be available to them in a court action based on the same facts and legal theories under the applicable federal, state or local law.  All limitations or other provisions regarding damages that exist under Kentucky law at the time of the request form mediation are applicable to this Agreement.

> **Covered Disputes**.  This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Kentucky and shall include, but not be limited to, all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death and any alleged departure from any applicable federal, state, or local medical, health care, consumer or safety standards.  Covered Dispute shall include the determination of the scope of or applicability of this Agreement to mediate/arbitrate.   Covered Dispute shall not include (1) involuntary discharge actions initiated by the Facility; (2) guardianship proceedings resulting from Resident's alleged incapacity; and (3) disputes involving amounts less than $2,000.00.

---

[1] Having reviewed the Notice of Removal and the Complaint, the Court is satisfied that it has subject matter jurisdiction under 28 U.S.C. § 1332.  Plaintiff Karen Arnold is a citizen of Kentucky and Defendants are citizens of Texas and Indiana.  (See Removal Notice [DN 1] ¶¶ 11–19.)  Defendants assert in their Notice of Removal that the amount in controversy in this matter exceeds $75,000.00 in damages, exclusive of interest and costs, "because it is facially apparent from Plaintiff's Complaint that Plaintiff is seeking damages in excess of the jurisdictional amount in controversy."  (Id. ¶¶ 21–22 (citing Compl. [DN 1-2] ¶¶ 29, 35, 43, 48, 54, 62).)

(ADR Agreement [DN 8-1] ¶¶ 3–4.)  At the top of the first page, in all-capital letters and in bold font, the Agreement states that "SIGNING THIS AGREEMENT IS NOT A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY."  (Id. at 1.)  Further the Agreement provides:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED BY A COURT OF LAW OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN. THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. YOUR SIGNATURE BELOW INDICATES YOUR UNDERSTANDING OF AND AGREEMENT TO THE TERMS SET OUT ABOVE.  PLEASE READ IT COMPLETELY, THOROUGHLY AND CAREFULLY BEFORE SIGNING.**

(ADR Agreement [DN 8-1] 4.)

Arnold contends that the arbitration agreement is unenforceable as it is unconscionable. (See Pl.'s Resp. to Defs.' Mot. Compel Arbitration [DN 14] 2.)

## II.    ANALYSIS

The ADR Agreement provides that the Kentucky Uniform Arbitration Act ("KUAA"), KRS 417.045 et seq., shall govern, with secondary reliance on the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, if for any reason the KUAA "cannot support the enforcement of" the Agreement.  (See ADR Agreement [DN 8-1] ¶ 5.)  The Acts "are substantially similar," Oldham v. Extendicare Homes, Inc., No. 5:12-CV-00199, 2013 WL 1878937, at *2 (W.D. Ky. May 3, 2013), both providing that written arbitration agreements shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law" or in equity "for the revocation of any contract," see 9 U.S.C. § 2; KRS 417.050.  Further, the Acts serve the same purposes, see Schnuerle v. Insight Commc'ns Co., L.P., 376 S.W.3d 561, 574 (Ky. 2012); N. Fork Collieries, LLC v. Hall, 322 S.W.3d 98, 102 (Ky. 2010) ("Both the KUAA and the Federal Arbitration Act

require that arbitration agreements be enforced no less rigorously than other contract provisions."), and the KUAA is interpreted "consistent with the FAA," Louisville Peterbilt, Inc. v. Cox, 132 S.W.3d 850, 854–57 (Ky. 2004).  As applicable to this case, there is no material difference between the FAA and the KUAA.  See Extendicare Homes, Inc. v. Whisman, --- S.W.3d ----, No. 2013-SC-000426-I, 2015 WL 5634309, at *8 (Ky. Sept. 24, 2015), as corrected (Oct. 9, 2015).

"When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Id. (citing Compuserve, Inc. v. Vigny Int'l Fin., Ltd., 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)); see also N. Fork Collieries, 322 S.W.3d at 102 (internal citations omitted) ("The task of the trial court confronted with" a motion to compel arbitration "is simply to decide under ordinary contract law whether the asserted arbitration agreement actually exists between the parties and, if so, whether it applies to the claim raised in the complaint.  If an arbitration agreement is applicable, the motion to compel arbitration should be granted.").  In the present case, Arnold only contests the first issue—whether the parties entered into a valid arbitration agreement.

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment." Kovac v. Superior Dairy, Inc., 930 F. Supp. 2d 857, 864 (N.D. Ohio

2013) (quoting Rupert v. Macy's, Inc., No. 1:09CV2763, 2010 WL 2232305, at *3 (N.D. Ohio June 2, 2010)); see Treved Exteriors, Inc. v. Lakeview Constr., Inc., No. CIV.A. 13-83-DLB-JGW, 2014 WL 1047117, at *3 (E.D. Ky. Mar. 18, 2014) (court applies summary judgment standard when ruling on motion to compel arbitration); Weddle Enters., Inc. v. Treviicos-Soletanche, J.V., No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) (same).  Under both Acts, the party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate, but once prima facie evidence of the agreement has been presented, the burden shifts to the party opposing arbitration.  See MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC, 392 S.W.3d 903, 906 (Ky. 2013) (quoting Louisville Peterbilt, Inc. v. Cox, 132 S.W.3d 850, 857 (Ky. 2004)); Ping v. Beverly Enters., Inc., 376 S.W.3d 581, 590 (Ky. 2012).   A party meets the prima facie burden of establishing an arbitration agreement by providing copies of a written and signed agreement to arbitrate.  MHC Kenworth, 392 S.W.3d at 906.  To survive the motion to compel arbitration, "the non-moving party must demonstrate that the validity of the agreement is 'in issue' by showing that there is a genuine issue of material fact as to the validity of the arbitration agreement." Treved, 2014 WL 1047117, at *3 (citing Great Earth Co. v. Simons, 288 F.3d 878, 888–89 (6th Cir. 2002)).  "If the nonmoving party satisfies this burden, the court must allow the case to proceed to trial."  Id.  "If the non-moving party fails to make the required showing, the court should compel arbitration."  Id.

Moving Defendants have satisfied their burden in establishing that the parties agreed to arbitrate by providing a copy of the written and signed agreement to arbitrate, (see ADR Agreement [DN 8-1]).  MHC Kenworth, 392 S.W.3d at 906.  Thus, the burden shifts to Arnold to "demonstrate that the validity of the agreement is 'in issue' by showing that there is a genuine

issue of material fact as to the validity of the arbitration agreement." Treved, 2014 WL 1047117, at *3 (quoting Simons, 288 F.3d at 888–89). That is, she must come forward with sufficient evidence that, when viewed in the light most favorable to her, would permit "a reasonable finder of fact [to] conclude that no valid agreement to arbitrate exists." Simons, 288 F.3d at 889.

Arnold offers no evidence, by affidavit or otherwise, to show that there is a genuine dispute of material fact as to the validity of the arbitration agreement. Arnold contends that this Court should order discovery "into the circumstances surrounding" Arnold's signing of the ADR Agreement, so that she is "given full opportunity to discover any grounds for staying or revoking arbitration that exists in equity or in contract law." (See Pl.'s Resp. to Defs.' Mot. Compel Arbitration [DN 14] 3.) Moving Defendants note that "[i]f Plaintiff possessed any material facts to legitimately dispute enforcement of the arbitration agreement, then those facts should have been presented by way of affidavit in her Response objecting to the Motion." (Defs.' Reply Supp. Mot. Compel Arbitration [DN 16] 5–6.) Without some sort of factual showing as to why the discovery requested is justified, the Court declines to grant such discovery. See Ex parte Greenstreet, Inc., 806 So. 2d 1203, 1207–09 (Ala. 2001) (holding that trial court abused its discretion in allowing party opposing motion to compel arbitration to conduct discovery on the issue of the validity and enforceability of the arbitration provision without first making a factual showing as to why that discovery was justified); Ex parte Bill Heard Chevrolet, Inc., 927 So. 2d 792, 804 (Ala. 2005) (quoting Greenstreet, Inc., 806 So. 2d at 1209) ("[A] party must present a factually based predicate before a right to conduct discovery regarding matters that could invalidate the agreement to arbitrate arises. At a minimum, a party opposing a properly supported motion to compel arbitration and seeking discovery on issues that could invalidate the

arbitration agreement must provide an affidavit describing the circumstances that are within its knowledge and that are relevant to its claimed defenses to arbitration.").

The Court now turns to Arnold's argument regarding unconscionability, "a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." GGNSC Louisville Hillcreek, LLC v. Warner, No. 3:13-CV-752-H, 2013 WL 6796421, at *8 (W.D. Ky. Dec. 19, 2013) (citing Conseco Fin. Servicing Corp. v. Wilder, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001)); Schnuerle, 376 S.W.3d at 575.  Under both the FAA and the KUAA, agreements to submit controversies to arbitration may be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Energy Home, Div. of S. Energy Homes, Inc. v. Peay, 406 S.W.3d 828, 835 (Ky. 2013) (quoting 9 U.S.C. § 2) (citing KRS 417.050).  "Certainly, unconscionability is one of the grounds upon which any contract may be revoked."  Id. (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341–42 (2011); Schnuerle, 376 S.W.3d at 575; Conseco, 47 S.W.3d at 341).

Under Kentucky law, the doctrine of unconscionability is to be "directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." Schnuerle, 376 S.W.3d at 575 (quoting Conseco, 47 S.W.3d at 341).  "An unconscionable contract is 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'"  Id. (quoting Conseco, 47 S.W.3d at 342).  "Whether a contract is substantively unconscionable (i.e., contains terms that are unreasonable or grossly unfair to one side or another) or procedurally unconscionable (referring to the process by which

the contract is reached) is a fact-intensive inquiry." Warner, 2013 WL 6796421, at *8.  Here, the facts belie the existence of either brand of unconscionability.

The ADR Agreement contains the following features that support its conscionability: (1) it is a stand-alone agreement; (2) five pages printed in normal font; (3) bold face all capital letter provision noting the agreement is not a condition of admission to or continued residence in the facility; (4) no limitation on type or amount of damage claims; (5) no limitation on causes of action; (6) no suspect forum selection clause; (7) no truncation of the otherwise applicable statute of limitations; (8) the terms are such that a person of ordinary experience and education is likely to understand; and (9) other courts applying Kentucky law have found that arbitration agreements presented as part of the nursing home admission process were not procedurally unconscionable.  See, e.g., Diversicare Leasing Corp. v. Strother, No. CIV.A. 14-128-HRW, 2015 WL 1802661, at *8 (E.D. Ky. Apr. 17, 2015); GGNSC Frankfort, LLC v. Tracy, No. CIV. 14-30-GFVT, 2015 WL 1481149, at *13 (E.D. Ky. Mar. 31, 2015); Golden Gate Nat. Senior Care, LLC v. Estate of Blevins ex rel. Patton, No. CIV.A. 14-110-HRW, 2015 WL 1467927, at *7 (E.D. Ky. Mar. 30, 2015); Brookdale Senior Living, Inc. v. Caudill, No. CIV.A. 5:14-098-DCR, 2014 WL 3420783, at *9–10 (E.D. Ky. July 10, 2014) motion for relief from judgment denied, No. CV 5: 14-098-DCR, 2015 WL 5822633 (E.D. Ky. Oct. 1, 2015); GGNSC Vanceburg, LLC v. Hanley, No. CIV.A. 13-106-HRW, 2014 WL 1333204, at *9 (E.D. Ky. Mar. 28, 2014); Warner, 2013 WL 6796421, at *8; Abell v. Bardstown Med. Inv'rs, Ltd., No. 3:11-CV-86-H, 2011 WL 2471210, at *1–3 (W.D. Ky. June 20, 2011); Beverly Enters., Inc. v. Ping, No. 2009-CA-001361-MR, 2010 WL 2867914, at *6 (Ky. Ct. App. July 23, 2010) rev'd on other grounds, 376 S.W.3d 581 (Ky. 2012).  Further, "[t]hat the ADR Agreement is a 'boiler-plate, pre-printed' document does not render it unconscionable."  Warner, 2013 WL 6796421, at *9

(citing Conseco, 47 S.W.3d at 342–43 (noting that an arbitration clause appearing single-spaced on the back of a pre-printed form did not render it procedurally unconscionable)).

Arnold's arguments against enforcing this agreement—at their core—are nothing more than objections to arbitration agreements in general, and therefore directly contradict the policy embodied in the FAA.  See Brookdale Senior Living Inc. v. Stacy, 27 F. Supp. 3d 776, 788 (E.D. Ky. 2014); Caudill, 2014 WL 3420783, at *9.   Arnold first contends that the arbitration agreement is substantively unconscionable because it "lacks sufficient consideration/mutuality." (Pl.'s Resp. [DN 14] 5–6.)   However, "an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration."   Peay, 406 S.W.3d at 835 (quoting Kruse v. AFLAC Int'l, Inc., 458 F. Supp. 2d 375, 385 (E.D. Ky. 2006)).   The obligations in the ADR Agreement are reciprocal and mutual: the Parties have agreed to arbitrate any claims they may have against the other party.   See Golden Gate Nat'l Senior Care, LLC v. Addington, No. 14-CV-327-JMH, 2015 WL 1526135, at *10–11 (E.D. Ky. Apr. 3, 2015); see also Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 974 (6th Cir. 2007).   Arnold also claims that the agreement is not mutually binding because any claim the facility might have against Arnold is not the same as "the very real right to take personal injury complaints to court," and thus the facility "gives up practically nothing" by agreeing to arbitration.  (See Pl.'s Resp. [DN 14] 5–6.) "Again, this is nothing more than an attack on arbitration itself: if the court system is sufficient to resolve both the claims brought by the facility and the resident, the only distinguishing feature here is that [Arnold] regards *arbitration itself* as insufficient, which says nothing about whether the contract is unconscionable."  Stacy, 27 F. Supp. 3d at 788.

Second, and without any supporting authority or argument, Arnold complains that the fees for pursuing arbitration, which under the ADR Agreement are to be split equally between

the parties, "are without question going to be higher than the fees going to a court for dispute resolution." (Pl.'s Resp. [DN 14] 6–7.) Arnold's speculative suggestion that sharing the cost of arbitration renders the arbitration agreement unconscionable and unenforceable falls short. Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000). As Moving Defendants note, Arnold has brought nothing before the Court to substantiate this argument other than merely suggesting it. Thus, Arnold's argument that she "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Id. at 91.

Arnold also argues that arbitration's truncated discovery will prevent her an adequate opportunity to present her claims. However, the ADR Agreement provides that each party "will have the right to conduct such discovery in support of its position, including conducting depositions of witnesses and serving written discovery requests to the other party, as the arbitrator deems appropriate." ([DN 8-1] ¶ 9.) "Although those procedures might not be as extensive as in [a court of law], by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)); Burton v. Bush, 614 F.2d 389, 390 (4th Cir. 1980) (internal citation omitted) ("When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a [jury] trial. One of these accoutrements is the right to pre-trial discovery."). Further, "[a]lthough discovery is not as extensive in arbitration, this is counterbalanced by the fact that arbitration is not bound by the rules of

evidence." <u>Shelton v. The Ritz Carlton Hotel Co., LLC</u>, 550 F. Supp. 2d 74, 82 (D.D.C. 2008) (citing <u>Gilmer</u>, 500 U.S. at 31).

There is simply nothing to suggest that the arbitration agreement is one-sided, oppressive, unfairly surprising or the result of unfair bargaining.  Thus, the Court finds that the ADR Agreement is valid and enforceable under both the FAA and Kentucky law.  Further, the Court finds that Arnold's claims regarding the care and treatment at her nursing home facility fall within the broad scope of claims encompassed in the "Covered Disputes" section of the ADR Agreement.  Accordingly, Arnold must submit her claims to arbitration pursuant to the terms of the agreement.

### III.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion to Compel Arbitration [DN 8] is **GRANTED**.  The claims arising out of Plaintiff's residency at Twin Towers Nursing and Rehabilitation Center shall be arbitrated pursuant to the terms of the arbitration agreement discussed herein.  **IT IS FURTHER ORDERED** that this action is **STAYED** pending any further proceedings to enforce any award of the arbitrator.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 8, 2016

cc:    Counsel of Record